IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION


LISA MOORE,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

No. C10-0157

RULING ON JUDICIAL REVIEW


## TABLE OF CONTENTS

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*   *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*III.*   *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     *A.*    *Moore's Education and Employment Background* . . . . . . . . . . . 5
     *B.*    *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . 5
         *1.*    *Moore's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . 5
         *2.*    *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . 7
     *C.*    *Moore's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*IV.*   *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     *A.*    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . 12
     *B.*    *Objections Raised by Claimant* . . . . . . . . . . . . . . . . . . . . . . 14
     *C.*    *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*V.*    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*VI.*   *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Lisa Moore on December 15, 2010, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Moore asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Moore requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On April 9, 2008, Moore applied for both disability insurance benefits and SSI benefits. In her applications, Moore alleged an inability to work since May 26, 2006 due to migraine headaches, depression, anxiety, allergies, and asthma. Moore's applications were denied on June 23, 2008. On September 15, 2008, her applications were denied on reconsideration. On December 10, 2008, Moore requested an administrative hearing before an Administrative Law Judge ("ALJ"). On January 25, 2010, Moore appeared via video conference with her attorney before ALJ John E. Sandbothe for an administrative hearing. Moore and vocational expert Julie A. Svec testified at the hearing. In a decision dated March 8, 2010, the ALJ denied Moore's claims. The ALJ determined that Moore was not disabled and not entitled to disability insurance benefits or SSI benefits because she was functionally capable of performing her past relevant work as a fast food worker. Moore appealed the ALJ's decision. On October 14, 2010, the Appeals Council denied Moore's request for review. Consequently, the ALJ's March 8, 2010 decision was adopted as the Commissioner's final decision.

On December 15, 2010, Moore filed this action for judicial review. The Commissioner filed an Answer on February 15, 2011. On March 28, 2011, Moore filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she was not disabled and could perform her past relevant work as a fast food worker. On May 24, 2011, the Commissioner filed a responsive brief arguing that the

ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On January 3, 2011, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision

"extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Moore's Education and Employment Background

Moore was born in 1976. She completed the tenth grade in school. Later, she earned her GED. Moore testified that she has a learning disability with math where she transposes numbers.

The record contains a detailed earnings report for Moore. The report covers Moore's employment history from 1989 to 2009. Moore had minimal earnings from 1993 to1999, earning less than $1700 each year. Between 2000 and 2007, she earned between $2,654.89 (2007) and $10,593.73 (2002). She had no earnings in 2008 and 2009.

### B. Administrative Hearing Testimony

### 1. Moore's Testimony

At the administrative hearing, Moore testified that she stopped working due to difficulties with migraine headaches. Specifically, Moore was terminated from her last job as a cab-driver for attendance reasons. She stated that she was missing the "majority" of work because of her migraine headaches. Moore's attorney and Moore had the following discussion regarding her migraines:

> Q: And how often, well, when did you start having migraines?
> A: When I was 10.
> Q: You were still able to work for a while with the migraines, is that right?
> A: Yes.
> Q: So have they gotten worse, or how have they changed?
> A: They've gotten more intense, they've gotten stronger, more severe, more frequent.
> Q: Do you know how often you have a migraine headache?
> A: Several times a week. . . .
> Q: Okay. What kind of treatment does [your physician] give you?
> A: I get preventative medication as well as medication to treat it once I do have them.

(Administrative Record at 28-29.) Beginning in 2009, Moore kept a journal of how many migraines she had per month. For example, Moore testified that in September she had 9 migraines, 17 in October, 13 in November, and 9 in December. Moore stated that her migraines last anywhere from a "few hours" to a "few days." When asked what she can do when she has a migraine, Moore responded that "[d]epending on the severity. Sometimes it's not that severe and I'm able to do some minor things around the house, other times it's really severe and the only thing I can do is go to bed and, and try to sleep."[1]

Moore's attorney and Moore also discussed Moore's functional capabilities:

> Q: Now as far as what kind of, or what kind of activities you can do during the day, I'm guessing from your medical records that you can, as long as you're not having a migraine you don't have any problems lifting, or standing, or walking.
> A: Right.
> Q: But if you're having a migraine, what can you do?
> A: Very limited.
> Q: Okay, and, and I think you already said you lie down?
> A: Uh-huh.
> Q: Does it have to be in a dark room?
> A: Cook [sic], and dark, and quiet.

(Administrative Record at 33.)

Next, Moore's attorney and Moore discussed Moore's difficulties with depression:

> Q: Now you, do you have any mental health diagnoses?
> A: Depression. . . .
> Q: How does that affect your daily life?
> A: It makes it difficult sometimes.
> Q: In what way?
> A: Really lack of motivation, I don't really want to get up and do things. . . .
> Q: And what, okay, so how, did you miss work because of depression ever?
> A: Sometimes.

---

[1] *See* Administrative Record at 31.

| | |
|---|---|
| Q: | How often did you miss work because of depression? |
| A: | There was times I just didn't feel like going in so I would call in and say I was not feeling well. |
| Q: | Uh-huh. And how often did that happen? |
| A: | Not, not that much. |
| Q: | Okay. Like once a month or less often than that? |
| A: | Probably two or three times a month. |
| Q: | How well do you get along with other people? |
| A: | Pretty good. |
| Q: | So the depression doesn't affect your ability to get along with people? |
| A: | Right. |

(Administrative Record at 33-34.)

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Julie A. Svec with a hypothetical for an individual who is "limited to light level physical activity, but no hazards and no driving, and no more than a regular pace."[2] The vocational expert testified that under such limitations, Moore could perform her past relevant work as a fast food worker. The ALJ asked a second hypothetical which was identical to the first hypothetical, except that the individual would require two or more absences from work per month. The vocational expert testified that under such limitations, Moore could not find competitive employment.

### C. *Moore's Medical History*

On May 17, 2005, Moore was referred to Dr. Michael C. March, Ph.D., for a psychological evaluation. Moore informed Dr. March that she had been treated for depression since 1991. She stated that her depression became worse in 1997 due to a stressful divorce. Upon examination, Dr. March diagnosed Moore with recurrent major depressive disorder of severe intensity, probable post-traumatic stress disorder, adjustment disorder with anxious mood, possible ADHD, borderline intellectual functioning versus learning disability, asthma, and migraines. Dr. March sought further psychological assessment in order to determine a course of treatment.

---

[2] *See* Administrative Record at 37.

On June 21, 2005, Moore met with Dr. March for further psychological assessment. Upon testing, Dr. March determined that Moore's verbal, performance, and full-scale IQ scores were all in the average range. Dr. March further found that:

> [Moore's f]und of general knowledge and commonsense reasoning were in fact high average. Her attention and concentration and capacity to formulate abstract verbal concepts were in the low average range. Her ability to process tasks in mental arithmetic was low average to borderline.

(Administrative Record at 300.) Dr. March diagnosed Moore with major depressive disorder, recurrent, moderate to severe intensity, ADHD, and probable post-traumatic stress disorder. Dr. March recommended medication and counseling as treatment.

On July 18, 2005, Dr. Rhonda Lovell, Ph.D., reviewed Moore's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Moore. On the Psychiatric Review Technique assessment, Dr. Lovell diagnosed Moore with learning disorder and ADHD, combined type, major depressive disorder, recurrent, moderate to severe, and probable post-traumatic stress disorder. Dr. Lovell determined that Moore had the following limitations: no restriction of activities of daily living, no difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Lovell determined that Moore was moderately limited in her ability to maintain attention and concentration for extended periods. Dr. Lovell concluded that:

> Based on formal testing, [Moore] has the ability to understand and remember instructions and procedures for basic and detailed tasks. Concentration is no more than moderately variable. . . . [C]urrent social activities indicate adequate interpersonal skills. [Moore's] treatment history and [activities of daily living] are not suggestive of significant difficulties with regularly completing a typical work week due to mental health issues.

(Administrative Record at 298.)

On September 19, 2005, Moore was referred to Dr. Dwight J. Schroeder, M.D., for a comprehensive psychological evaluation. In discussing her symptoms, Dr. Schroeder noted that Moore is:

> easily distracted. . . . She is very, very disorganized. Her mood is down some. . . . She notes that she would sleep all the time if allowed. Energy is down, motivation is up and down, interest is down, concentration is down and memory is down. She notes occasional crying spells with and without reason, worthlessness, hopelessness, guilt, trouble making simple decisions, some social isolation, [and] irritability[.]

(Administrative Record at 335.) Upon examination, Dr. Schroeder diagnosed Moore with recurrent major depressive disorder and ADHD. Dr. Schroeder recommended medication and exercise as treatment.

On September 28, 2007, Moore was referred to Physician's Clinic of Iowa ("PCI") for a neurological consultation due to difficulties with migraine headaches. At PCI, Moore met with Julie K. Shaw, ARNP. Shaw reviewed Moore's medical history as follows:

> [Moore] has had a longstanding history of migraines. She began having migraines at age 10. When she was in elementary school, they would often be associated with visual disturbances, but as she has moved into her adult years she has not had significant problems with visual disturbance. She used to get her migraines infrequently, perhaps a couple of times a year, but now is getting these about every week. She either wakes with them or they awaken her. She has no true prodromal symptoms. She will just begin with a dull headache and it will progressively get worse if it would happen to start during the day. Otherwise when she wakes up with one, it tends to be pretty well established by the time she awakens. At their worst, the severity is a 10 out of 10. Today she does report headache, but it is a 5 or 6 out of 10. She does report light sensitivity, sound sensitivity, some nausea without vomiting, and dizziness. She describes the pain as throbbing, sometimes pressure, sometimes like a bat over the head. She has tried various medications, and the only one she thinks has made any difference really is the Butalbital, but she feels that this just takes the edge off and lets her sleep.

(Administrative Record at 392.) Upon examination, Shaw diagnosed Moore with a history of classic migraines, current history of common migraines, and history of depression. Shaw recommended medication as treatment.

On November 30, 2007, Moore had a follow-up appointment with Shaw. According to the treatment notes, Moore "has done quite well" using the prescribed medication. Shaw noted that "[s]he has gone from the daily headache in October, simmering down towards the end of October, and this month so far has only had to use abortive agents twice. Her headaches are significantly better."[3] Shaw recommended that Moore continue her medication as treatment.

On June 2, 2008, Dr. Scott Shafer, Ph.D., reviewed Moore's medical records and provided DDS with a Psychiatric Review Technique assessment for Moore. Dr. Shafer diagnosed Moore with ADHD and major depressive disorder, recurrent. Dr. Shafer determined that Moore had the following limitations: no restriction of activities of daily living, no difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Shafer concluded that:

> [Moore] has a mental impairment that is not severe. This is based on the following observations. Even though she did not mention it in her application, psychiatric notes indicate that she has been driving a cab for at least six months. Recent psychiatric notes indicate that [Moore] is doing pretty well, her [mental status exam] is unremarkable, and her affect is rated as okay. [Activities of daily living] indicate few limitations and [Moore] is able to provide care for her daughter and manage independently. She is able to engage in a variety of daily activities.

(Administrative Record at 430.)

On August 1, 2008, Moore met with Shaw complaining of increased difficulties with headaches. Shaw noted that Moore was under a lot stress, and her headaches had become more frequent. Moore was having headaches 4-5 times per week. Upon

---

[3] *See* Administrative Record at 437.

examination, Shaw diagnosed Moore with common migraines and vasoconstrictor withdrawal headaches. Shaw recommended medication as treatment.

On October 31, 2008, at the request of the Iowa Department of Human Services, Shaw filled out a Report on Incapacity for Moore. In the report, Shaw diagnosed Moore with chronic migraines. Shaw opined that Moore was unable to do any kind of work while she was experiencing a migraine headache. Shaw further opined that Moore was unable to drive, lift, or stand during a migraine. Shaw recommended Moore for disability benefits.

On March 3, 2009, at another follow-up appointment with Shaw, Moore continued to have chronic/recurring headaches lasting for 1 to 3 days. Upon examination, Shaw diagnosed Moore with common migraines and vasoconstrictor withdrawal headaches.

On April 2, 2009, at the request of Shaw for a second opinion, Moore met with Dr. Pedro Gonzalez-Alegre at the University of Iowa Hospitals and Clinics ("UIHC") for a neurological evaluation. Dr. Gonzalez-Alegre noted that for the past six months Moore had "about 4 to 5 migraines per week, to total about 20 days or more per month. Previous to that, she used to have 2 or at most 3 per week. Therefore, in the [past] few years they have increased in frequency."[4] Dr. Gonzalez-Alegre noted that Moore's headaches last all day. "She tends to sleep in a dark room. Sleep can relieve pain. After the headache, she may be a little bit fatigued for a while."[5] Dr. Gonzalez-Alegre further noted that Moore's headaches can be triggered by stress. Dr. Gonzalez-Alegre concluded that:

> Moore has chronic daily headache consistent with chronic migraines. She has a longstanding diagnosis of migraines and in recent years this has transformed into a chronic, daily headache. Current therapy is not optimal and she is not working due to the disability caused by these migraines.

---

[4] *See* Administrative Record at 476.

[5] *Id.*

(Administrative Record at 477.) Dr. Gonzalez-Alegre recommended trying different types of medication to "optimize" treatment.

On September 28, 2009, Moore had a follow-up appointment with Shaw. Moore continued to complain of chronic headaches lasting for 1 to 3 days. Upon examination, Shaw diagnosed Moore with common migraines and vasoconstrictor withdrawal headaches. On December 4, 2009, Moore met with Shaw again, and noted that she "is starting to see some days free of headache on Topamax 200 mg."[6] Specifically, Shaw noted that Moore "[i]ndicates that she [] now may have two to three days a week that she has no headaches at all which is a significant improvement than previous chronic daily headache."[7] Shaw recommended continued use of medication as treatment.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Moore is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the

---

[6] *Id.* at 499.

[7] *See* Administrative Record at 499.

claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id.* In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Moore had not engaged in substantial gainful activity since May 26, 2006. At the second step, the ALJ concluded from the medical evidence that Moore had the following severe combination of impairments: migraine headaches and obesity. At the third step, the ALJ found that Moore did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Moore's RFC *as* follows:

> [Moore] has the residual functional capacity to perform light
> work . . . with the following additional limitations: no
> working around hazards; no driving; and no more than a
> regular pace.

(Administrative Record at 14.) Also at the fourth step, the ALJ determined that Moore could perform her past relevant work as a fast food worker. Therefore, the ALJ concluded that Moore was not disabled.

### B. Objections Raised by Claimant

Moore argues that the ALJ's decision is flawed because the ALJ's decision as a whole is not supported by substantial evidence. Specifically, Moore argues that the ALJ failed to address her "worsening condition" after August 2008. Moore concedes that her "treatment prior to August 2008 was sporadic, and the frequency of her migraines appeared to fluctuate considerably."[8] However, Moore maintains that after August 2008, her "condition worsened dramatically . . . and she obtained consistent, specialized medical treatment for migraines that were unresponsive to treatment and which occurred several times a week."[9] Moore concludes that:

> the evidence of [her] worsening condition was submitted to the
> ALJ, who reviewed but did not evaluate the evidence. The
> fact of the worsening of her migraines is uncontrovertible
> [sic]. Her treating nurse practitioner wrote that Ms. Moore
> was unable to work during a migraine. At hearing, the
> vocational expert testified that a person who will miss more
> than two days of work a month will be unable to maintain
> employment. This testimony, when combined with
> Ms. Moore's medical records after August 1, 2008, justifies
> a reversal with a finding of disability effective August 1, 2008.

See Moore's Brief (docket number 13) at 7.

An ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also*

---

[8] *See* Moore's Brief (docket number 13) at 5.

[9] *Id.*

*Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 (S.S.A.).

An ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In his decision, the ALJ reviewed Moore's medical history as follows:

> [Moore's] longitudinal medical history is not necessarily consistent with her allegation of disability. The record shows [Moore] has been treated by her primary care physician for a variety of minor complaints as well as low back and neck pain, asthma, migraines, depression, and obesity. Treatment records include a variety of medications prescribed for migraine headaches. In September 2007 [Moore] was referred for neurological consultation with evaluation by Julie Shaw, ARNP. [Moore] reported a history of migraines since age 10. At that time she reported migraines every other week associated with light and sound sensitivity, nausea, and dizziness. She described pain as a throbbing pressure. . . . Symptoms were consistent with common migraines.

Neurological assessment was within normal limits. It was noted [Moore's] dose of Amitriptyline was subtherapeutic and without improvement of symptoms; therefore, medication was changed to Topamax.

In November 2007, [Moore] reported a significant improvement in migraine occurrence with the new medication[.] . . . In January 2008, [Moore] reported doing very well with migraines and had not used over-the-counter or prescription medications for quite some time. . . . Topamax dosage was reduced. [Moore] did not return for followup of headaches until August 2008, when she reported increased stress and more frequent headaches occurring four to five times per week. Depakote was started in addition to Topamax. [Moore] was advised to maintain a headache diary and avoid utilizing over the counter medication. In October 2008, Depakote was increased as well as IV infusion; however, [Moore] was intolerant with side effects on the IV infusion and this was discontinued after two doses. She reported benefit from increased Depakote and was referred to the University of Iowa Hospitals for further evaluation. Their assesment [*sic*] concurred with the diagnosis of common migraine, unfortunately [Moore] could not remember any of the triptan medication she had been on and recommendations were repetitive of past therapies. Topamax therapy was re-initiated and by December 2009 [Moore] reported benefit with several headache free days per week.

(Administrative Record at 15-16.)

While it is clear that the ALJ reviewed the medical evidence in the record, the Court questions whether the ALJ fully and fairly developed the record with regard to Moore's difficulties with migraine headaches after August 2008. The ALJ's description of Moore's migraine history after August 2008, paints an inadequate picture based on the administrative record.[10]

In his decision, the ALJ stressed that in August 2008, Moore "reported increased stress and more frequent headaches occurring four to five times per week. . . . In October

_____

[10] See Administrative Record at 15-16.

2008, Depakote was increased as well as IV infusion; however, [Moore] was intolerant with side effects on the IV infusion and this was discontinued after two doses. She reported benefit from increased Depakote and was referred to the University of Iowa Hospitals for further evaluation. . . . Topamax therapy was re-initiated and by December 2009 [Moore] reported benefit with several headache free days per week."[11] However, a thorough examination of the administrative record shows that beginning on August 1, 2008, Moore met with her treating source, Julie K. Shaw, ARNP, complaining of chronic migraine headaches occurring 4-5 times per week.[12] On October 31, 2008, Moore met with Shaw again, and continued to complain of chronic migraine headaches occurring 4-5 times per week.[13] On November 14, 2008, while Moore reported some benefit from increased doses of Depakote, Shaw noted that Moore continued to have chronic migraine headaches lasting 1-3 days.[14] On March 3, 2009, Moore reported that she no longer believed that she was "really getting any benefit" from Depakote, and the treatment notes again stated that Moore had chronic migraine headaches which lasted 1-3 days.[15] On April 2, 2009, Moore met with doctors from the Neurology Department at the University of Iowa Hospitals and Clinics. It was noted that for "the past 6 months [Moore] has had about 4 to 5 migraines per week, to total about 20 days or more per month."[16] On April 16, 2009, Moore returned to Shaw complaining of continued chronic migraines, lasting

---

[11] *Id.*

[12] *See* Administrative Record at 444-46.

[13] *Id.* at 481-83.

[14] *Id.* at 484-86.

[15] *Id.* at 487-89.

[16] *Id.* at 476.

1-3 days.[17]   On July 27, 2009, Moore met with Shaw, and continued to have chronic migraine headaches that lasted 1-3 days.[18]   On September 29, 2009, Moore's difficulties had not improved and she continued to suffer from chronic migraine headaches that lasted 1-3 days.[19]   Finally, on December 4, 2009, Moore met with Shaw and reported that she was "starting to see some days free of headache on Topamax."[20]   Shaw noted that Moore "may have two to three days a week that she has no headaches at all which is significant improvement than previous chronic daily headaches."[21]   Nevertheless, Moore still suffered from about 4 headaches per week.   Furthermore, in October 2008, Shaw opined that Moore was unable to work, drive, lift, or stand during a migraine.[22]

In considering the totality of Moore's treatment for migraine headaches after August 2008, the Court believes that an individual suffering from migraine headaches which make working, driving, lifting, or standing impossible, 4-5 days per week for 17 months, would have great difficulty performing work as a fast food worker or finding work at jobs that exist in significant numbers in the national economy.   Apparently, the vocational expert agrees with the Court's belief, as she testified at the administrative hearing that an individual missing 2 or more days of work per month would be unable to find competitive employment.[23]

Because the Court is concerned that the ALJ failed to adequately consider Moore's treatment history for migraine headaches after August 2008, particularly with regard to

---

[17] *Id.* at 490-92.

[18] *Id.* at 493-95.

[19] *Id.* at 496-98.

[20] *Id.* at 499-500.

[21] *See* Administrative Record at 499.

[22] *Id.* at 248.

[23] *Id.* at 37.

Shaw's 2-plus year history of treating Moore, and her opinion that Moore would be unable to work, drive, lift, or stand during a migraine, the Court finds it necessary to address the weight given to Shaw's opinions by the ALJ. In his decision, the ALJ weighed Shaw's opinions as follows:

> The undersigned has considered the report on incapacity completed for the Department of Human Services by Julie Shaw, ARNP in October 2008 which indicated [Moore] would be unable to work during a migraine, but did not specify functional limitations; however, no weight is given the opinion as the opinion is not from an acceptable medical source.

(Administrative Record at 16.) The Court finds two flaws with the ALJ's analysis. The first flaw is relatively minor. The ALJ incorrectly states that Shaw offered no opinions regarding functional limitations, except that Moore would be unable to work during a migraine. Factually, the ALJ's assertion is incorrect. While Shaw did not go into great detail regarding Moore's functional limitations due to migraine headaches, Shaw did opine that in addition to not being able to work, Moore would also be unable to drive, lift, or stand during a migraine.[24] The ALJ's second flaw is much more substantial because the dismissal of a nurse practitioner's opinions simply because she is not an acceptable medical source is not allowed under the Social Security Regulations.

On August 9, 2006, the Social Security Administration ("SSA") issued Social Security Ruling 06-03p. The purpose of the ruling was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). SSR 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a nurse practitioner, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent

---

[24] *See* Administrative Record at 248.

with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

Here, Shaw has a specialty in neurology, she has treated Moore for 2-plus years, her diagnosis and findings are consistent with findings by doctors in the neurology department at the UIHC, and her treatment notes are relevant for consideration of Moore's history of migraine headaches. Based on all these factors, the Court finds that by simply dismissing her opinions because she is not an "acceptable medical source," the ALJ failed to follow Social Security Regulations, and improperly weighed Shaw's opinions. Therefore, the Court determines that the ALJ failed to fully and fairly develop the record with regard to Shaw's opinions. *See Cox*, 495 F.3d at 618.

Turning to the ALJ's consideration of the medical evidence as a whole, the Court finds that while the focus of the ALJ's decision and findings appears to support his conclusion that Moore was not disabled prior to August 2008, his decision lacks similar focus with regard to the medical evidence after August 2008. Specifically, the ALJ failed to fully and fairly develop the record with regard to Shaw's treatment history of Moore for migraine headaches after August 2008, including Shaw's treatment notes, the findings of doctors at the UIHC in April 2009, and the evidence that Moore suffered chronic

headaches 4-5 days per week for at least 17 months. The Court believes that this evidence is pertinent to a determination of whether Moore is disabled. Moreover, the ALJ's reliance on the opinion evidence of the two non-examining DDS physicians, who indicated that Moore's difficulties with migraines was only a minor impairment, is misplaced. In offering their opinions, neither non-examining physician considered the medical evidence after August 2008, because both non-examining physicians offered their opinions before August 2008.[25] Therefore, having reviewed the entire record, the Court finds that the ALJ failed to fully and fairly develop the record with regard to the medical evidence as a whole. Specifically, the Court determines that the ALJ's lack of consideration of pertinent medical evidence after August 2008, requires remand. Accordingly, on remand, the ALJ must fully and fairly develop the record with regard to Moore's medical history after August 2008, with particular consideration of Shaw's treatment history of Moore and her opinions regarding Moore's inability to work, drive, lift, or stand during a migraine. *See Cox*, 495 F.3d at 618; *Guilliams*, 393 F.3d at 803.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

---

[25] The non-examining DDS physicians offered their opinions in July 2005 and June 2008. *See* Administrative Record at 282-298; 418-431.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) properly consider the opinions of Shaw and (2) fully and fairly develop the record with regard to Moore's medical history. Accordingly, the Court finds that remand is appropriate.

### V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ shall fully and fairly develop the record with regard to the opinions of Shaw. The ALJ must also fully and fairly develop the record with regard to Moore's medical history.

### VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 20th day of October, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA